UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROBERT LEE JENKINS,

        Plaintiff,

v.

BONDS,

        Defendant.

No. 2:13-cv-2151-GEB-EFB P

FINDINGS AND RECOMMENDATIONS

Plaintiff is a state prisoner proceeding without counsel in this action brought pursuant to 42 U.S.C. § 1983. Defendant moves for summary judgment, arguing that the undisputed facts show that he did not subject plaintiff to excessive force; that plaintiff suffered no injury; and that defendant is entitled to qualified immunity. ECF No. 40. For the following reasons, the motion must be denied.

**I.    The Facts Presented by the Parties**

In his verified amended complaint, plaintiff alleges that on December 5, 2011, defendant Bond (sued herein as "Bonds") used excessive force against him during a transport from the reception area at High Desert State Prison ("HDSP") to his housing unit. ECF No. 14 at 3-4. Plaintiff avers that he is mobility-impaired and requires the use of a cane due to lifelong injuries. *Id.* at 3. Nevertheless, upon his reception at HDSP, a medical staff member told Bond that plaintiff was faking his injuries. *Id.* When plaintiff told Bond of his injuries and need of a cane,

1

Bond replied that he knew plaintiff was faking and ordered him to get up and be handcuffed for transport. *Id.* Bond handcuffed plaintiff very tightly, twisting his right hand downward and left hand upward, causing severe pain. *Id.* Bond then snatched plaintiff upward with his right hand under plaintiff's shoulder, bending plaintiff over and dragging him the quarter mile to the housing unit in sub-freezing temperature. *Id.* at 3-4. This caused plaintiff severe pain in his wrist, arms, and back, which remained for three days. *Id.* Plaintiff told Bond that he was hurting plaintiff, but Bond told plaintiff he knew plaintiff was faking because the doctor had told him so. *Id.* at 4.

A fellow inmate in the transport, Anthony Oliver, provided a sworn declaration which is appended to the amended complaint. *Id.* at 7. Oliver avers that he saw Bond snatch plaintiff by the right arm and drag him to make him walk faster. *Id.*, ¶ 2. Plaintiff appeared to Oliver to be in pain and plaintiff told Bond so, but Bond responded to plaintiff that he was faking. *Id.* Bond told the other inmates in the transport that it was plaintiff's fault they had to wait longer in the cold weather. *Id.*, ¶ 3. The temperature was about 15 degrees below zero. *Id.* Bond also applied cuffs excessively tight to Oliver and threatened him with physical violence when he complained about it. *Id.*, ¶ 4. The walk to the housing unit took about 30 minutes. *Id.*, ¶ 5.

Defendant Bond declares that plaintiff told him at the beginning of the escort that he was covered by the Americans with Disabilities Act, but Bond confirmed with medical staff that there were no limitations to plaintiff's housing or escort. ECF No. 40-5, ¶ 5-6. Bond thus believed that plaintiff could participate in the escort to his housing facility, a distance of about 150 yards. *Id.* Bond was obligated to follow the medical orders in place at the prison regardless of what plaintiff told him. *Id.* Bond ordered plaintiff three times to cuff up for escort, but plaintiff refused at least two of those orders. *Id.*, ¶ 6. It is Bond's usual practice to slide a finger under the cuffs while tightening them to ensure they are secure but not overly tight. *Id.* Bond declares that he never snatched plaintiff but rather assisted him when he fell behind the other inmates. *Id.*, ¶ 7. Bond denies that he threatened plaintiff. *Id.*

S. Lopez, Chief Medical Executive at Kern Valley State Prison, reviewed plaintiff's medical records following December 5, 2011 at defense counsel's behest. ECF No. 40-6. Lopez "found that there were no diagnoses in plaintiff's history to tie any injury to a December 5, 2011

incident with Sergeant Bond." *Id.*, ¶ 7. No records show new injuries or that plaintiff's pre-existing injuries were exacerbated. *Id.* Plaintiff's medical file did not contain any healthcare requests from plaintiff around December 5, 2011. *Id.*, ¶ 8.

Plaintiff testified at his deposition that he heard physician's assistant Miranda tell Bond prior to the transport that plaintiff had no injuries. ECF No. 41, Notice of Lodging Pl.'s Deposition (Pl.'s Dep.) at 20. He concedes that "Sergeant Bonds was under the actual belief, from what Mr. Miranda told him, that I was faking my injuries." *Id.* at 55. Bond ordered plaintiff to cuff up many times and did not listen when plaintiff tried to explain his injuries. *Id.* at 22. Bond put the cuffs on so tight that plaintiff's wrist bulged, causing him pain. *Id.* at 31. The cuffs pinched plaintiff's skin and cut off his circulation, causing his hand to go numb. *Id.* Plaintiff told Bond the cuffs were too tight. *Id.* Plaintiff was at the back of the line of inmates being transported, with defendant lifting and dragging him, but plaintiff could not keep up. *Id.* at 32-33. Bond stopped the line, moved plaintiff to the front, and told the other inmates that they could blame plaintiff for the slow transport in the cold weather. *Id.*

Plaintiff further testified that, as a result of Bond's conduct, his wrists became swollen and painful with red bruises. *Id.* at 35-36. Bond's transport made plaintiff's back very painful, with nerve pain shooting down his legs. *Id.* Plaintiff's existing condition did not cause that degree of throbbing pain. *Id.* at 37. Plaintiff verbally requested to see a doctor on either the evening of December 5th or December 6th but was denied. *Id.* at 41, 45. He saw a nurse about three days later and told her of his injuries but she purposefully wrote "no injuries" on the chart. *Id.* at 42-43, 50-51. Plaintiff did not contradict her because his injuries were healing and he assumed she was covering up for defendant Bond. *Id.* His wrist injuries healed in about a week, but his back injuries became worse as time progressed. *Id.* at 65-66. His medical records do not reflect these injuries because he was denied medical treatment continuously during his stay at HDSP. *Id.* at 82-83.

Plaintiff also described the incident on December 8, 2011 in a videotaped "use of force" interview with a Lieutenant Albonico that defendant has lodged with the court. In the video, plaintiff describes some of his injuries, but none are visible to the camera.

3

**II.     The Motion for Summary Judgment**

Defendant argues that the undisputed facts show that he did not subject plaintiff to excessive force, that plaintiff suffered no injury, and that he should be afforded qualified immunity. As discussed below, there are genuine disputes over material facts that preclude summary judgment in defendant's favor.

**A. Summary Judgment Standards**

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

/////

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures.  Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own.  When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim.  *See, e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue.  *See Celotex*, 477 U.S. at 323-24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *See id*. at 322.  In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id*. at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case.  *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").  Whether a factual dispute is material is determined by the substantive law applicable for the claim in question.  *Id*.  If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine.  In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in

question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute, the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See id*. at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *Am. Int'l Group, Inc. v. Am. Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). In that case, the court must grant summary judgment.

Concurrent with the motion for summary judgment, defendant advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF No. 40-1; *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

/////

/////

**B. Analysis**

    **1. <u>Excessive Force</u>**

Prisoners have a right to be free from excessive force at the hands of correctional staff under the U.S. Constitution's Eighth Amendment. *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002). To succeed on a claim of excessive force, a prisoner must show that a correctional officer used force against him maliciously and sadistically to cause harm, rather than in a good-faith effort to maintain or restore discipline. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). To determine whether the evidence establishes such a scenario, the factfinder may consider: (1) the need for force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the officer; and (4) any efforts made to temper the severity of the forceful response. *Id.* at 7.

While not every "malevolent touch" by an officer violates the Constitution, *Hudson*, 503 U.S. at 9, the factfinder must focus not on the extent of injury but rather the extent of force used. *Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir. 2002). De minimis uses of force do not violate the Constitution unless they are "repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9.

Defendant argues that the undisputed facts show that the force he used was minimal and appropriate in light of plaintiff refusing to cuff up in response to two or three orders to do so. The court disagrees. Defendant has presented no evidence that plaintiff's attempts to explain to defendant his need for specialized cuffs and a cane presented a risk of danger under the circumstances. On the other hand, plaintiff has presented at least some evidence that defendant applied the cuffs so tightly that it caused him pain and injury. *See Wall v. County of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004) (holding that "overly tight handcuffing can constitute excessive force" under the Fourth Amendment); *Candler v. Mallot*, No. 2:14-cv-0363 GEB KJN, 2015 U.S. Dist. LEXIS 62310, at *6-20 (E.D. Cal. May 12, 2015) (applying *Wall* in the Eighth Amendment context). Plaintiff has testified to this fact several times and has submitted the declaration of a fellow inmate who avers that defendant also applied cuffs too tightly to him during the same transport. Both inmates state that they complained about the overly-tight cuffs to defendant. Defendant's evidence on this point – that plaintiff's wrist bruises were either not noted or no

7

longer noticeable to the nurse three days later and that defendant's normal practice is to apply cuffs so that they are not too tight – simply raises a material factual dispute regarding whether he applied the cuffs too tightly.

Plaintiff has also submitted evidence (in the form of his and inmate Oliver's testimony) that defendant handled him in an overly rough manner during the transport and told the other inmates that they could blame plaintiff for the slow transport in cold weather. If credited by the factfinder, this evidence may establish that defendant used more force than was necessary against plaintiff with intent to cause him harm rather than because he wished to safely complete the transport. While defendant disputes this evidence, his evidence does not definitively refute it, and summary judgment on the claim is therefore inappropriate.

### 2. **Injury**

Defendant argues that plaintiff lacks sufficient evidence that he suffered injury as a consequence of defendant's conduct. The undersigned disagrees. Overly-tight handcuffs need not produce a visible physical injury to support a claim of excessive force; it is enough that the cuffs caused plaintiff "unnecessary pain," which plaintiff avers that they did. *Thompson v. Lake*, 607 Fed. Appx. 624, 625 (9th Cir. 2015); *Candler*, 2015 U.S. Dist. LEXIS at *19-20. In addition, plaintiff has testified that defendant's conduct worsened his back and nerve pain. Defendant's evidence – that defendant's medical expert finds no injury in plaintiff's medical records attributable to defendant's conduct and the absence of visible injuries on the use of force videotape – simply raises a material dispute regarding the existence and extent of plaintiff's injury.

### 3. **Qualified Immunity**

Lastly, defendant argues that he should be granted qualified immunity from plaintiff's claim. Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mueller v. Auker*, 700 F.3d 1180, 1185 (9th Cir. 2012). To determine whether an official is entitled to qualified immunity, the court must consider (1) whether, taken in the light most favorable to the plaintiff, the facts show that the officer's conduct

violated a constitutional right, and (2) whether the law clearly established that the officer's conduct was unlawful in the circumstances of the case. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The court can consider these two "prongs" of the qualified immunity analysis in the order of its choosing. *Pearson v. Callahan*, 555 U.S. 223, 244 (2009).

Defendant first argues that the evidence shows that he did not violate plaintiff's constitutional rights. As discussed above, the undersigned finds that triable issues of material fact exist on that question, and thus defendant may not be granted qualified immunity on that basis at this stage of the proceeding.

Defendant next argues that the law did not clearly establish his conduct to be unlawful under the circumstances of this case because he reasonably relied on medical staff's statement that plaintiff did not require accommodation and could participate in the escort. The undersigned agrees that this undisputed fact – that physician's assistant Miranda told defendant that plaintiff was faking his injuries – made it reasonable for defendant to refuse to provide plaintiff with a cane or other accommodation during the transport. However, plaintiff has submitted evidence that defendant injured him with overly-tight handcuffs and deliberately rough handling during the escort. Taking the evidence in the light most favorable to plaintiff, such conduct would not have been a reasonable response to Miranda's statement about plaintiff's injuries (or lack thereof). Instead, plaintiff's evidence tends to show malicious conduct unwarranted by the circumstances. Accordingly, qualified immunity should not be granted to defendant at this time.

**III.     Recommendation**

For the reasons above, it is hereby RECOMMENDED that defendant's April 17, 2017 motion for summary judgment (ECF No. 40) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections

/////

9

within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 31, 2017.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE